```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
```

| | | |
|---|---|---|
| MICHAEL PIZARRO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| INTERNATIONAL PAPER COMPANY | : | |
| | : | NO. 19-5081 |

MEMORANDUM

Bartle, J.                                              March 3, 2020

        Plaintiff Michael Pizarro ("Pizarro") brings this action against defendant International Paper Company ("International Paper") for violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601.  Pizarro asserts two claims against International Paper under the FMLA: (1) interference, and (2) retaliation.  Before the court is the motion of defendant for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

I

        Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving

party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).  Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant.  Id. at 252.  "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]."  Id.

In addition, Rule 56(e)(2) provides "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion."  Fed. R. Civ. P. 56(e)(2).  In making a summary judgment determination, we view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.  See In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004).  The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment.  See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000).

II

The following facts are undisputed.  International Paper is a producer of paper, fiber-based packaging products, and pulp for tissue and personal hygiene products.  Pizarro is now a former employee of International Paper's Barrington,

-2-

New Jersey facility, where he began working in September 1997. Most recently, Pizarro worked as a "Die Cut" Machine Operator and was a member of the United Steelworkers Union.

In 2002, Pizarro was diagnosed with type 2 diabetes. Pizarro also suffers from neuropathy, which results in pain and swelling of the feet. As a machine operator, Pizarro spent a substantial majority of his time on his feet while working. Pizarro's diabetic neuropathy occasionally flared up and caused increased pain in his feet due to increased swelling. As a result, he could not stand for extended periods of time.

Following his diagnosis, Pizarro requested intermittent FMLA leave to manage his pain. International Paper approved his requests for FMLA leave each subsequent year for 17 years without any documented issues. International Paper's company policy required Pizarro to call a third-party call-line to state that he would be missing work because of FMLA reasons. Pizarro generally called at least one hour prior to start of his scheduled shift to inform International Paper of his absence from work.

Pizarro was scheduled to work from 3:00 a.m. to 3:00 p.m. EST on Saturday, December 8, 2018. Unbeknownst to International Paper, Pizarro also had plans to attend a Dallas Cowboys-Philadelphia Eagles football game in Arlington, Texas the next day on Sunday, December 9. Pizarro and his wife

purchased tickets to attend the game in November 2018 and made the appropriate flight and hotel reservations. Pizarro's flight to Texas was scheduled to leave from Philadelphia at 8:25 p.m. on Saturday, December 8. At 12:43 a.m. on Saturday, two hours before his shift was to begin, Pizarro called the third-party line and reported that he was taking FMLA leave because he was "sick" and would not be coming to work.

Pizarro boarded his flight on time and landed in Texas with his wife on Saturday night. The next day, Pizarro arrived at the football game two hours early to tailgate with friends. He stayed at the stadium for over three hours until the game ended, and was on his feet for approximately fifty percent of the game. After the game, Pizarro walked approximately a half-mile to a convention center. During his deposition, Pizarro testified that he did not start "feeling better" on Saturday and that his leg pain did not go away during the game on Sunday. Throughout their time in Texas, Pizarro and his wife made several posts on Facebook that were visible to his friends and followers on the website.

Pizarro's return flight from Dallas to Philadelphia was scheduled to leave at 6:00 a.m. CST on Monday, December 10. Pizarro was scheduled to start work on the same day at 3:00 p.m. EST. At 4:45 a.m. CST, Pizarro texted a coworker stating, "[f]light delayed in Texas, dont [sic] know how long for, just a

heads up." At 5:34 a.m. CST, Pizarro called the third-party line and reported that he was taking FMLA leave because he was "sick" and did not report to work on December 10.

A supervisor at International Paperwork was a friend of Pizarro on Facebook. The supervisor was aware that Pizarro had called off work over the weekend and believed that Pizarro's Facebook posts about the football game showed that he was improperly using FMLA leave. The supervisor forwarded the Facebook posts to management and human resources. The supervisor later learned about Pizarro's text message to his co-worker, which also solidified his belief that Pizarro was misusing his FMLA leave. He subsequently notified management about the text message.

Keith Fisher ("Fisher"), a site manager, also believed that Pizarro had informed a different shift supervisor earlier in the week that he planned to call off from work on Saturday, December 8, 2018. Fisher personally saw a note from the shift supervisor that stated, "Mike P. Call out Saturday." Fisher believed the turn of events to be suspicious and investigated the matter. Pizarro returned to work the next day, on Tuesday, December 11, 2018, with souvenir cups from the football game for his co-workers and worked a full shift without any incident.

The following day, on Wednesday, December 12, 2018, Pizarro was summoned to a meeting with management, human

resources, and a union representative.  At this meeting, Pizarro was asked about his trip to Texas.  Pizarro refused to confirm that he had traveled to Texas but instead responded, "who told you this information?"  He further stated that he had a doctor's note for his missed days of work.  The doctor's note stated, "[patient] seen by me.  Please excuse for 2 days Saturday x Monday 12/8 – 12/10."  The note was dated December 8, 2018.  Pizarro admits that he asked his doctor for the note after the fact on December 11 during a pre-scheduled, routine appointment and that the note was mistakenly dated.  Pizarro further testified that he requested the doctor's note "[j]ust in case a situation aroused [sic], and just to get a doctor's note, just to try to cover myself just in case."  Pizarro was suspended pending further investigation.  Pizarro deleted his Facebook posts about the football game immediately after he was suspended.

Wayne Parker, the general manager at Pizzaro's workplace, and Fisher considered the use of FMLA leave to attend a football game to be a terminable offense.  International Paper's Shop Rules and Regulations state "[t]he falsifying of personnel records," and "[t]he falsifying of any company reports, records, or other information" are "intolerable offenses" that will result in immediate termination of

employment.  Pizarro confirmed being aware of and having access to the Shop Rules and Regulations.

Based on its investigation, Parker believed that Pizarro called off from work on December 8, 2018 to get ready for his trip to Texas, not for legitimate FMLA reasons.  Fisher believed that Pizarro called off from work on December 10, 2018 for similar fraudulent purposes, including because of the flight delay.

On December 13, 2018, based on its investigation and all available evidence, International Paper, through Parker and Fisher, determined that Pizarro violated its policies regarding falsifying company reports and terminated Pizarro's employment.

III

FMLA claims are commonly brought under a theory of either interference or retaliation.  <u>Callison v. City of Philadelphia</u>, 430 F.3d 117, 119 (3d Cir.2005).  An FMLA interference claim arises under 29 U.S.C. § 2615(a)(1), which makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA.  An FMLA retaliation claim arises under 29 U.S.C. § 2615(a)(2), which makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA.

Plaintiff is not guaranteed an "automatic right to claim interference where, as here, the claim is so clearly redundant to the retaliation claim." Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 598 F. App'x 109, 113 (3d Cir. 2015). The difference in burdens of proof alone will not allow plaintiff to go forward with an interference claim that is "in form and substance . . . a claim for retaliation." Id. 114.

We find that Pizarro's FMLA interference claim is duplicative of his retaliation claim. The factual underpinnings of Pizarro's interference claim is premised on the same allegations as the retaliation claim, that is he was unlawfully terminated for taking FMLA leave. Indeed, Pizarro's complaint includes only one single count ("Violations of the FMLA") which details both an interference and a retaliation claim based on the same factual allegations. We will not consider his interference claim separately from his retaliation claim. They rise or fall together.

IV

We turn to plaintiff's claim that his termination was a form of retaliation for requesting FMLA leave. To defeat summary judgment on his retaliation claim under the FMLA, Pizarro must satisfy the three-step burden-shifting inquiry laid out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). First, Pizarro must state a prima facie claim. To do

so, Pizarro must allege that: (1) he engaged in protected activity by requesting FMLA leave; (2) he suffered an adverse decision; and (3) the adverse decision was causally related to his request for leave. Simons v. Bos. Sci., 765 F. App'x 773, 778 (3d Cir. 2019). Second, once a plaintiff produces evidence of a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." Id. at 777. Third, if the employer can come forward with a legitimate, non-discriminatory reason for terminating the plaintiff, then the burden shifts back to the plaintiff to establish that the "proffered reason [is] merely a pretext for discrimination." Id.

It is undisputed that plaintiff meets the first two prongs of the McDonnell Douglas test to state a claim under the FMLA. Plaintiff engaged in a protected activity by requesting and using his FMLA leave and suffered an adverse action through his termination. The dispute here concerns the causal requirement. To defeat summary judgment, plaintiff must point to evidence sufficient to create an inference that a causal link exists between his FMLA leave and his termination. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-81 (3d Cir. 2000). To establish causation, plaintiff must show: "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern

-9-

of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). In addition to these two primary methods, inconsistencies or discrepancies in the employer's reasons for terminating the employee may be enough to support an inference of causation. LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007). After reviewing the record, we conclude that Pizarro failed to come forward with any evidence to establish causation.

First, we measure temporal proximity from the initial date on which the litigant engaged in his protected activity. Blakney v. City of Philadelphia, 559 Fed. App'x. 183, 186 (3d Cir. 2014). A close temporal proximity between a protected activity and an adverse act may support an inference of causal relationship where the timing is unusually suggestive. Ward v. Ingersoll-Rand Co., 688 F. App'x 104, 110 (3d Cir. 2017). Where the temporal proximity is not unusually suggestive, the appropriate test is "timing plus other evidence." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000).

The protected activity, which is the request for FMLA leave on December 8, 2018 and December 10, 2018, is certainly close enough to the adverse act, that is termination of employment on December 13, 2018. However, the temporal proximity between Pizarro's decision to take leave and his

-10-

subsequent termination is insufficient to establish a causal connection in light of his history of requesting FMLA leave. Pizarro was first approved for FMLA leave 17 years ago. International Paper consistently granted his requests without any issue over the years thereafter until his termination. International Paper only decided to terminate Pizarro's employment after management became aware of misconduct that it believed violated the company's policies. Accordingly, the undisputed facts do not provide evidence of the temporal proximity rising to the level suggestive of retaliation.

Second, in the absence of an unusually suggestive temporal proximity, Pizarro must show evidence that International Paper "engaged in a pattern of antagonism in the intervening period." Capps v. Mondelez Glob. LLC, 847 F.3d 144 (3d Cir. 2017). Pizarro asserts that animus can be inferred because: (1) temporal proximity between his call-offs from work and his discharge shows retaliatory behavior; (2) management did not know about Pizarro's physical condition on the days he called out for FMLA, and therefore, the termination was wrongful; and (3) a regional general manager stated in an email that "these guys are killing our other employees." Pizarro asserts that "these guys" is a negative label referring to workers who take FMLA and therefore shows retaliatory intent. We disagree.

-11-

As discussed above, the temporal proximity between Pizarro's decision to take leave and his subsequent termination is insufficient to establish animus rising to the level suggestive of retaliation. Moreover, we note that an employer's decision to terminate an employee for FMLA abuse will likely occur in close temporal proximity to the time when the abuse is discovered. Such a termination without additional evidence is not enough to show animus. Next, management's lack of knowledge about Pizarro's specific illness is irrelevant to our retaliation analysis. While decisionmakers did not have access to Pizarro's medical diagnosis, this factual assertion does not suggest that the decision to terminate Pizarro's employment was driven by animus. To discredit a proffered reason, Pizarro "cannot simply show that the employer's decision was wrong or mistaken but must demonstrate . . . that the employer was actually not motivated by its proffered nondiscriminatory reason." Parker v. Verizon Pennsylvania, Inc., 309 F. App'x 551, 556 (3d Cir. 2009). Lastly, it is undisputed that the regional general manager was not a decisionmaker in the termination process. There is no evidence that suggests the one-time remark was indicative of management's attitude towards those seeking FMLA leave at the company. Stray remarks or statements by non-decisionmakers do not establish retaliation. Fakete v. Aetna, Inc., 308 F.3d 335, 338 n.2 (3d Cir. 2002).

Third, the record as a whole is devoid of evidence showing inconsistencies or discrepancies in International Paper's reasoning for terminating Pizarro's employment. International Paper has consistently stated its belief that Pizarro fraudulently used FMLA leave to prepare to attend a football game in Texas and because his return flight was delayed. It is well established that an employer is permitted to discipline an employee for conduct that violates its policies, and such conduct cannot be the basis for a retaliation claim without evidence to the contrary. Capps v. Mondelez Glob. LLC, 847 F.3d 144 (3d Cir. 2017).

Finally, Pizarro asserts that causation can be proved through the "mixed motive approach." "An employee who claims retaliation and seeks to proceed under a mixed-motive approach must show that his or her use of FMLA leave was 'a negative factor' in the employer's adverse employment action." Egan v. Delaware River Port Auth., 851 F.3d 263, 272 (3d Cir. 2017). We find that Pizarro has failed to produce any evidence that his legitimate use of FMLA was a factor in International Paper's decision to terminate his employment.

Pizarro has not presented any credible evidence showing retaliatory animus or antagonism from International Paper. In contrast, until his termination, Pizarro never complained about the way he was treated and claims to have

"loved" working for International Paper. Pizarro admits that on occasions when his absence from work would be questioned, management would work with him to demonstrate that his absences were for legitimate FMLA purposes. Prior to his termination, International Paper never disciplined, demoted, or retaliated against Pizarro for requesting or taking FMLA leave. Moreover, International Paper never prevented plaintiff from adhering to his doctor's orders or following his medical treatment. International Paper terminated Pizarro's employment only after learning about activity that it considered suspicious and evaluating the evidence from its investigation.

Even assuming that Pizarro had satisfied his prima facie case, International Paper has pointed to a legitimate, nonretaliatory business reason for his termination, that is its honest belief that Pizarro falsified company information to fraudulently take FMLA leave. Our Court of Appeals has held that "an employer's honest belief that its employee was misusing FMLA leave can defeat an FMLA retaliation claim." See Capps, 847 F.3d at 147. If defendant is able to provide such a reason, the burden of production shifts back to Pizarro to produce evidence that the proffered reason is merely a pretext for actual discrimination. See Fuentes v. Perskie, 32 F.3d 759, 763-64 (3d Cir. 1994). To show pretext, plaintiff must point to some evidence, direct or circumstantial, from

which a factfinder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. Id. at 764.

The record in this matter is devoid of any evidence of pretext. In contrast, the undisputed facts actually support International Paper's honest belief that Pizarro misused his FMLA leave. It is undisputed that: (1) International Paper accommodated Pizarro's request for FMLA leave for 17 years without any retaliation; (2) there is no evidence that International Paper retaliated against any one of its employees for requesting FMLA leave; (3) Pizarro requested FMLA leave the day before and after he attended a football game in Texas; (4) Pizarro called off from work, seeking FMLA leave less than an hour after he texted a co-worker that his flight was delayed; (5) when questioned, Pizarro refused to confirm that he attended a game in Texas; and (6) Pizarro deleted Facebook posts showing he was at the football game immediately after he was suspended. The record is simply devoid of any evidence to create a genuine dispute of material fact regarding whether the reasons offered by International Paper for his termination were pretextual.

In sum, it cannot be reasonably disputed that Pizarro was lying to his employer that he was ill and could not work,

all the while he was travelling to Texas and attending the Cowboys-Eagles game with significant physical activity in the process. Accordingly, this court will grant the motion of defendant for summary judgment as to Pizarro's claims for retaliation under FMLA.